## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
## ABINGDON DIVISION

| | | |
|---|---|---|
| ANGELA WELCH, AS CHAPTER 7 TRUSTEE FOR THE BANKRUPTCY ESTATE OF FRANK MICHAEL MONGELLUZZI, | ) ) ) ) ) | |
| Plaintiff, | ) ) | Case No. 1:14CV00063 |
| v. | ) ) | **OPINION AND ORDER** |
| HIGHLANDS UNION BANK, | ) ) | By: James P. Jones United States District Judge |
| Defendant. | ) | |

*Robert F. Elgidely and Michael A. Friedman, Genovese Joblove & Battista, P.A., Fort Lauderdale, Florida, and Igor M. Babichenko, McGuire Woods LLP, Richmond, Virginia, for Plaintiff; Patrick R. Hanes and Jonathan T. Lucier, Williams Mullen, Richmond, Virginia, for Defendant.*

Pending before the court is the Defendant's Motion for Judgment on the Pleadings filed pursuant to Federal Rule of Civil Procedure 12(c). For the reasons stated, the motion will be denied.

### I.

Angela Welch, the Chapter 7 Trustee for the bankruptcy estate of Frank Michael Mongelluzzi (the "Trustee"), filed this action in the United States District Court for the Middle District of Florida against Highlands Union Bank ("Highlands"), a commercial bank located in this judicial district, seeking to avoid

alleged fraudulent conveyances pursuant to 11 U.S.C. § 544(b).[1]  Section 544(b)

"does not in general establish substantive provisions for the avoidance of

transfers."  4 William L. Norton Jr. & William L. Norton III, *Norton Bankruptcy*

*Law and Practice* § 63:7 (3d ed.).  Rather, it allows a trustee to utilize applicable

nonbankruptcy law available to creditors.  *Id.*

   The Trustee filed an Amended Complaint and the Florida court entered an

order by agreement on September 18, 2014, transferring the case to this court

pursuant to 28 U.S.C. § 1406(a).  Thereafter, Highlands filed its Answer to the

Trustee's Amended Complaint.  On November 3, 2014, Highlands filed a Motion

for Judgment on the Pleadings.  The motion has been fully briefed and is ripe for

decision.[2]

## II.

   According to the Trustee's Amended Complaint, Frank Mongelluzzi and his

spouse (the "Mongelluzzis") owned and operated various temporary labor staffing

companies, referred to collectively as "Able Body Labor Businesses," between

---

[1]   The case is factually related to other § 544(b) actions brought by the Trustee
against three other banks in the same bankruptcy proceeding.

[2]   I will dispense with oral argument because the facts and legal contentions are
adequately presented in the materials before the court and argument would not
significantly aid the decisional process.

Case 1:14-cv-00063-JPJ-PMS   Document 53   Filed 02/19/15   Page 2 of 26   Pageid#: 344

1986 and 2010. The Able Body Labor Businesses were headquartered in Clearwater, Florida, and had 170 office locations in 25 states. The labor staffing businesses generated over $200 million in annual revenues between 2004 and 2009.

The Mongelluzzis also maintained various other personal and business assets, including "restaurants, construction companies, pawn shops, residential and commercial real estate holdings, aircraft, and yachts." (Am. Compl. ¶ 10, ECF No. 15.) According to the Amended Complaint, the non-labor staffing interests "were not financially self-sufficient but, rather, relied heavily upon the Able Body Labor Businesses' revenue, loan proceeds, and illicit banking activities." (*Id.* ¶ 11.)

In total, the Mongelluzzis and their various business entities allegedly maintained 314 bank accounts at approximately 38 financial institutions, including 12 bank accounts at Highlands (the "Highlands Bank Accounts") between 2007 and 2011. According to the Amended Complaint, "[a]t the time the Highlands Bank Accounts were opened, Highlands was required to conduct due diligence with regard to the identity of the account holders, the nature of their business activities, the source of their revenue, as well as the intended purpose for, and anticipated use, of the accounts." (*Id.* ¶ 13.) After the accounts were opened, the Trustee alleges that "Highlands was required to monitor the activity in the

Case 1:14-cv-00063-JPJ-PMS   Document 53   Filed 02/19/15   Page 3 of 26   Pageid#: 345

Highlands Bank Accounts through use of its automated software systems." (*Id.* ¶ 14.)

The Trustee also alleges that the Mongelluzzis and their various business entities had a "substantial lending relationship with Highlands in the period 2007 through 2011." (*Id.* ¶ 18.) The Trustee asserts that "[i]n connection with the administration of the Highlands Loans, Highlands obtained and scrutinized information concerning the obligors' financial condition on a periodic basis." (*Id.* ¶ 19.)

The Trustee asserts that Frank Mongelluzzi and his accomplices engaged in a check kiting scheme through the use of the multiple bank accounts, including the Highlands Bank Accounts. The Amended Complaint describes the check kiting scheme in the following terms:

> Basically, F[rank] Mongelluzzi and others continuously issued checks drawn on accounts which lacked sufficient available funds to cover them (the "Check Kite Accounts") so that they would have access to interest free loans of the fictitious account balances during the float period and thereby hinder and/or delay F[rank] Mongelluzzi's and the Business Entities' creditors in the period 2007 through 2010.
>
> In order to provide cover for their massive check kiting scheme, F[rank] Mongelluzzi and others would then continuously write checks drawn on the accounts of their other affiliated entities (or transfer loan proceeds) and deposit those checks (or loan proceeds) to the Check Kite Accounts before the float period expired so that the checks would not bounce and thereby cause the revelation and cessation of the scheme.

-4-

(*Id.* ¶¶ 21-22.)

The Trustee contends that the check kiting scheme resulted in numerous bank account overdrafts. The Trustee characterizes the overdrafts as loans to Frank Mongelluzzi that were repaid with subsequent deposits during the float periods associated with the check kiting scheme.

The Amended Complaint provides eight detailed examples of how the check kiting scheme and overdraft repayment process worked in practice. Two of these examples involve a Highlands' bank account in which check kiting allegedly occurred on January 5-7, 2010, and January 22-25, 2010. For example, regarding the latter example, the Trustee alleges that

> [b]eginning on January 22, 2010, when the available balance in the [Highlands] 2742 account was a negative $(10,587.39), F[rank] Mongelluzzi wrote a series of checks as follows: Check No. 1256 to Professional Staffing for $300,000 on January 22, 2010 and Check No. 1488 to Stearns Bank for $117,484.70 on January 22, 2010. In order to provide cover for these checks, on January 25, 2010, F[rank] Mongelluzzi deposited Check No. 542 from The Risk Group for $117,484.70 and Check No. 550 from The Risk Group for $305,000. But for the deposits made into [Highlands] 2742 on January 25, 2010, there would not have been sufficient funds to pay the checks drawn on January 22, 2010.

(*Id.* ¶ 23(e).) The Risk Group is identified in the Amended Complaint as "an entity owned by F[rank] Mongelluzzi." (*Id.* ¶ 23(a).)

Case 1:14-cv-00063-JPJ-PMS   Document 53   Filed 02/19/15   Page 5 of 26   Pageid#: 347

The Trustee alleges that "Highlands' relationship with F[rank] Mongelluzzi represented a significant departure from ordinary banking practices and its normal course of dealings with customers." (*Id.* ¶ 43.) The Trustee also asserts that

> [a]lthough Highlands had a common law, statutory and regulatory duty to detect and terminate check kiting, money laundering, and other illicit banking activities in the Highlands Bank Accounts, it permitted a multitude of highly irregular and suspicious banking transactions to occur, many of which appeared to have no legitimate business purpose.

(*Id.* ¶ 16.)

The Trustee alleges that "Highlands' actual knowledge of F[rank] Mongelluzzi's intent to hinder and/or delay creditors is evidenced by significant circumstantial evidence in the period 2007 through 2010," which evidence included the following:

> (a)   a pattern of writing checks on accounts without sufficient available balances to cover them followed by transfers of funds from accounts of other affiliated entities and use of loan proceeds in order to cover such checks before the float period expired;
>
> (b)   frequently overdrawn accounts;
>
> (c)   material defaults on loan covenants and restrictions;
>
> (d)   material discrepancies and ambiguities in financial reports;
>
> (e)   the failure to provide current financial statements, tax returns and related documentation as required by the loan documents;
>
> (f)   repayment of the Highlands Loans with loan proceeds from other financial institutions;

(g)     nominal cash on hand in relations to existing financial obligations;

(h)     ongoing cash flow issues; and

(i)     an overly leveraged financial condition.

(*Id.* ¶¶ 25-26.)

The Trustee alleges that Highlands continued its banking relationship with the Mongelluzzis and their related business entities despite this circumstantial evidence "so that it could continue to collect substantial fees, charges, interest, and other forms of revenue to the exclusion and detriment of F[rank] Mongelluzzi's and the Business Entities' legitimate creditors." (*Id.* ¶ 28.)  The Trustee asserts that "Highlands received substantial transfers from F[rank] Mongelluzzi and certain of the Business Entities while the foregoing circumstantial evidence was accumulating and after it obtained knowledge of F[rank] Mongelluzzi's insolvency and the check kiting scheme." (*Id.* ¶ 33.)

The alleged check kiting scheme ultimately collapsed when several financial institutions closed or froze many of the subject bank accounts and refused to honor checks drawn thereon between May and August 2010.  "In response to the collapse of the check kiting scheme, Highlands issued notices of the closure of at least 7 bank accounts to the Mongelluzzis on or about December 6, 2010." (*Id.* ¶ 32.)

The Trustee's causes of action against Highlands are related to alleged transfers that occurred within the four-year period preceding the commencement of Frank Mongelluzzi's bankruptcy filing. Specifically, the Trustee claims that "Highlands intended the negative cash balances in F[rank] Mongelluzzi's bank accounts to constitute loans for which the Bank perceived a credit risk." (*Id.* ¶ 43.) Therefore, the Trustee asserts that Frank Mongelluzzi's transfers to Highlands to repay such overdraft loans totaling $1,246,103.37 constituted transfers of an interest in property within the meaning of Chapter 726 of the Florida Statutes and other applicable law. As a result, the Trustee claims that the alleged overdraft transfers to Highlands are subject to avoidance and recovery under 11 U.S.C. § 544(b). An exhibit to the Amended Complaint identifies 38 overdrafts and accompanying repayments to Highlands that are allegedly subject to avoidance.

III.

A Rule 12(c) motion for judgment on the pleadings is considered under the same standard as a Rule 12(b)(6) motion to dismiss for failure to state a claim. *Occupy Columbia v. Haley*, 738 F.3d 107, 115 (4th Cir. 2013). A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of a complaint. *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir.1999). A Rule 12(b)(6) motion, however, "does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Id.* (internal quotation marks and citation omitted);

*see also Occupy Columbia*, 738 F.3d at 116 (noting an exception "when the face of the complaint clearly reveals the existence of a meritorious affirmative defense" (internal quotation marks and citation omitted).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  In evaluating a pleading, the court must accept as true all well-pleaded facts and construe those facts in the light most favorable to the pleader.  *Philips v. Pitt Cnty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009).

## IV.

### A.

Highlands' first substantive argument is that the "Overdraft Loan Repayment Transfers" identified by the Trustee did not harm or deplete the Mongelluzzi bankruptcy estate and, therefore, are not subject to avoidance under the Bankruptcy Code.  In short, Highlands argues that no harm occurred because the alleged fraudulent transfers were made into Mongelluzzi's "*own bank account*," making the transfers property of the bankruptcy estate pursuant to 11 U.S.C. § 541(a)(1).  (Def. Highlands Union Bank's Mem. of Law in Supp. of its Rule 12(c) Mot. for J. on the Pleadings 12, ECF No. 45.)  According to Highlands'

argument, the transfers increased or maintained the property of the bankruptcy estate.

The fundamental problem with Highlands' argument is that it essentially reframes the allegations made by the Trustee in the Amended Complaint. It is correct that the alleged fraudulent transfers were made into Mongelluzzi's accounts. However, the basis for avoidance is that the funds transferred into those accounts were then applied to overdraft balances or loans for the benefit of Highlands. In other words, the transferred funds were not retained for the benefit of the bankruptcy estate, but were obtained by Highlands as a creditor with knowledge of the alleged check kiting scheme. *Cf. Mission Bay Campland, Inc. v. Sumner Fin. Corp.*, 731 F.2d 768, 772 (11th Cir. 1984) ("A debtor may convey its assets to a creditor to satisfy its antecedent debts, even if the debtor intended to defeat the claims of other creditors and the creditor had knowledge of such intention. . . . The transfer becomes fraudulent, however, if the creditor actually participates in the debtor's fraudulent purpose, provided such a purpose exists." (internal citation omitted)). For purposes of Highland's Rule 12(c) motion, the court must accept as true this well-pleaded fact and construe it in the light most favorable to the Trustee. *See Philips*, 572 F.3d at 180. Therefore, even assuming

harm is a required element of a fraudulent transfer action, the Trustee has alleged sufficient facts to assert harm in this context.[3]

## B.

Highlands' next argument is that the Trustee's claims fail because the Trustee has not alleged a transfer of an interest in Frank Mongelluzzi's property. Section 544 of the Bankruptcy Code permits a trustee to "avoid any transfer of an interest of the debtor in property . . . that is voidable under applicable law by a creditor holding an unsecured claim." 11 U.S.C. § 544(b)(1). Pursuant to this provision, Highlands asserts that the Trustee has not alleged that an interest of the debtor — Frank Mongelluzzi — was transferred. Rather, Highlands interprets the Trustee's allegations as stating that the property transferred was that of a separate corporate entity owned by Frank Mongelluzzi.

---

[3] Highlands asserts an argument in its reply brief that the "The Trustee's Claims are Barred by Section 550's Single Satisfaction Rule." (Def. Highlands Union Bank's Reply in Supp. of its Rule 12(c) Mot. for J. on the Pleadings 8-10, ECF No. 50.) This argument was not asserted in Highland's initial Rule 12(c) motion and will not be addressed separately in this opinion. *See Clawson v. FedEx Ground Package Sys., Inc.*, 451 F. Supp. 2d 731, 734 (D. Md. 2006) ("The ordinary rule in federal courts is that an argument raised for the first time in a reply brief or memorandum will not be considered."). It appears, however, that this argument is closely related to Highland's "harm" argument in that Highlands states that "[a]ny additional recovery from Highlands would give the estate a windfall because the estate already received the funds it is seeking to recover now from Highlands." (*Id.* at 10.) In any event, I would note that this remains a disputed issue of fact in this case.

Highlands has misinterpreted the Trustee's allegations in two ways. First, a separate corporate entity may have been the drawer of the checks at issue, but Frank Mongelluzzi was presumably the payee or holder of the checks that the Trustee specifically alleges he deposited into the Highlands Bank Accounts. Under these circumstances, Frank Mongelluzzi would likely possess a property interest in the funds he deposited. *See, e.g.*, *Carl v. Republic Sec. Bank*, 282 F. Supp. 2d 1358, 1366 (S.D. Fla. 2003) ("Generally, when funds are deposited with a bank, the bank takes title to the money and owes a debt to its customer, which corresponds to the amount of the deposit.").

The more significant transfer for purposes of avoidance, however, is the one that occurred after the funds were deposited. As framed by the Trustee in Exhibit 9 of the Amended Complaint, Frank Mongelluzzi was the "Payor" of funds used to repay overdrafts to Highlands in its capacity as "Payee."[4] (Am. Compl. Exh. 9, ECF No. 15.) In other words, Frank Mongelluzzi's deposited funds were subsequently transferred to Highlands in order to satisfy prior overdrafts in the Highlands' accounts. At this stage in the litigation, the Trustee has sufficiently alleged a transfer of the debtor's property.

---

[4] The one exception is the last transfer listed in Exhibit 9 that indicates that the "Payor" was "Anne Mongelluzzi, Frank Mongelluzzi Noel Dr. Property Owners Acct."

Case 1:14-cv-00063-JPJ-PMS   Document 53   Filed 02/19/15   Page 12 of 26   Pageid#: 354

C.

Highlands' third argument is that the Trustee has failed to show that actual overdrafts occurred in this case. Highlands asserts that the Trustee's theory that overdrafts were repaid with subsequent deposits is "inconsistent with the law governing checking transactions," because deposits were made within the two-day banking cycle during which Highlands could have denied payment on the transactions that created the alleged overdrafts. (Def. Highlands Union Bank's Mem. of Law in Supp. of its Rule 12(c) Mot. for J. on the Pleadings 16, ECF No. 45.) Highlands' argument, however, is largely based on a factual dispute regarding the logistics of the banking transactions described by the Trustee in its pleadings and cannot be resolved at this stage of the litigation.

More specifically, the Trustee has sufficiently alleged facts that the check kiting and overdraft scheme operated on the basis of overdraft credit that was extended prior to the actual collection of funds deposited. *See* Richard Hagedorn & Henry Bailey, *Brady on Bank Checks: The Law of Bank Checks* ¶ 19.01 ("An overdraft is the payment by a bank from its funds of a check drawn on it by a depositor who does not have sufficient funds on deposit to pay the check. A potential overdraft occurs whenever a bank is presented with checks against an account totaling an amount greater than cash in the account and checks deposited but not collected from the payor banks. If the bank pays the checks presented

against the account before the checks deposited are collected, the result is an overdraft." (footnote omitted)). For example, as described by the Trustee in the January 22-25, 2010 example, a series of checks were written on Frank Mongelluzzi's negative balance account that were subsequently covered by later deposits. The two-day cycle asserted by Highlands would presumably apply to both the initial draft and the subsequent deposit, thus creating a draw on overdraft credit at sometime during the execution of the alleged check kiting.[5] This interpretation of the Trustee's pleadings is warranted for purposes of Highlands' Rule 12(c) motion, because the court is obligated to accept as true all well-pleaded facts and construe those facts in the light most favorable to the pleader. *See* *Philips*, 572 F.3d at 180.

## D.

The remaining arguments asserted by Highlands are directed at the specific causes of action set forth in the Amended Complaint. Without resolving the preliminary choice of law issues identified by Highlands in its brief, I will briefly

---

[5] As described by one court,

[c]heck kiting consists of drawing checks on an account in one bank and depositing them in an account in a second bank when neither account has sufficient funds to cover the amounts drawn. Just before the checks are returned for payment to the first bank, the kiter covers them by depositing checks drawn on the account in the second bank. Due to the delay created by the collection of funds by one bank from the other, known as the "float" time, an artificial balance is created.

*United States v. Stone*, 954 F.2d 1187, 1188 n.1 (6th Cir. 1992).

address Highlands' various Virginia and Florida state law arguments associated with the Trustee's three causes of action. Although I reject Highlands' substantive arguments at this stage of the litigation, this determination has no bearing on Highlands' more general choice of law argument, which is fact dependent and cannot be resolved at this time.

1.

First, Highlands challenges the actual fraudulent transfers claim asserted in Count I of the Amended Complaint based on its position that the Trustee failed to plead sufficient facts showing Highlands' notice of Frank Mongelluzzi's fraudulent intent as required under Virginia law. Specifically, a Virginia statute provides that "[e]very gift, conveyance, assignment or transfer of, or charge upon, any estate . . . given with intent to delay, hinder or defraud creditors, purchasers or other persons of or from what they are or may be lawfully entitled to shall . . . be void." Va. Code Ann. § 55-80. This provision provides protection to a "purchaser for valuable consideration, unless it appear that he had notice of the fraudulent intent of his immediate grantor or of the fraud rendering void the title of such grantor." *Id.* Proof of actual knowledge is not required, as it is

> sufficient to show that the grantee had knowledge of such facts and circumstances as would have excited the suspicion of a man of ordinary care and prudence, and put him upon such inquiry as to the bona fides of the transaction as would necessarily have led to the discovery of the fraud of the grantor.

Case 1:14-cv-00063-JPJ-PMS   Document 53   Filed 02/19/15   Page 15 of 26   Pageid#: 357

*Bank of Commerce v. Rosemary & Thyme, Inc.*, 239 S.E.2d 909, 912 (Va. 1978) (internal quotation marks and citation omitted); *see also Gold v. Sovereign Bank (In re Taneja)*, 453 B.R. 618, 623 (Bankr. E.D. Va. 2011) ("[I]t seems clear that a plaintiff attacking a fraudulent conveyance under § 55-80 must always allege, as part of its cause of action, not only the debtor's fraudulent intent in making the transfer, but the transferee's notice of that intent."). Applying this standard, Highlands asserts that the Trustee has failed to sufficiently allege that it had knowledge of Frank Mongelluzzi's fraudulent intent in this case.

Even assuming Virginia law applies, Highlands' knowledge argument is essentially a factual dispute that cannot be resolved pursuant to a Rule 12(c) motion. According to the Amended Complaint, Highlands had "actual knowledge of F[rank] Mongelluzzi's intent to hinder and/or delay creditors [that] is evidenced by significant circumstantial evidence." (Am. Compl. ¶ 25, ECF No. 15.) As detailed above, the Amended Complaint sets forth nine examples of circumstantial evidence available to Highlands, including references to writing checks without sufficient available funds with subsequent covering deposits and frequently overdrawn accounts. Both of these examples are directly related to the Trustee's core allegations of a check kiting scheme, and are supported by the 38 transfers listed in Exhibit 9 of the Amended Complaint.

In spite of these allegations, Highlands refutes the Trustee's pleadings by asserting that the circumstantial evidence described in the Amended Complaint is not "specific" to Highlands.[6] (Def. Highlands Union Bank's Mem. of Law in Supp. of its Rule 12(c) Mot. for J. on the Pleadings 19, ECF No. 45.) Highlands, however, has not described how the Trustee's allegations are not specific to it when, for example, a bank is generally not obligated to permit overdrafts, particularly in the frequency alleged in this case. *See* Hagedorn & Bailey, *supra,* ¶ 19.02 ("A bank is normally not under any obligation to permit an overdraft in the absence of agreement otherwise, even where the bank had previously permitted overdrafts by the same depositor."). Ultimately, Highlands may prove that it is correct regarding the facts, but it cannot prevail on this purely factual issue at this time.

Similarly, Highlands also challenges the actual fraudulent transfers claim asserted in Count I of the Amended Complaint based on its assertion that it was a "mere conduit" for Mongelluzzi's funds, thus preventing liability for any fraudulent transfer under Florida law. In general, Highlands asserts that under Florida law it was not under a duty to investigate routine banking services and acted in good faith regarding the transactions alleged by the Trustee.

---

[6] The one exception is Highlands' recognition that Mongelluzzi repaid Highlands with loan proceeds from other banks. Highlands, however, asserts that this is not fraudulent.

The mere conduit rule is an affirmative defense and "is an 'equitable exception' to the fraudulent transfer provisions in the Bankruptcy Code." *Perlman v. Bank of Am., N.A.*, 561 F. App'x 810, 812–13 (11th Cir. 2014) (unpublished) (noting that neither the Eleventh Circuit, nor any Florida state court has addressed whether the mere conduit defense applies to the Florida Uniform Fraudulent Transfer Act). The mere conduit rule

> requires a defendant to "establish (1) that it did not have control over the assets received, *i.e.*, that it merely served as a conduit for the assets that were under the actual control of the transferor *and* (2) that it acted in good faith and as an innocent participant in the fraudulent transfer."

*Perlman v. Wells Fargo Bank, N.A.*, 559 F. App'x 988, 994 (11th Cir. 2014) (unpublished) (alterations omitted) (quoting *In re Harwell*, 628 F.3d 1312, 1323 (11th Cir. 2010)). Regarding the good faith element,

> the relevant question is whether the bank had actual knowledge of the fraudulent purpose for which the transfers were made or had knowledge of such facts or circumstances as would have induced an ordinarily prudent person to make inquiry, and which inquiry, if made with reasonable diligence, would have led to the discovery of the fraudulent purpose.

*Mukamal v. BMO Harris Bank N.A. (In re Palm Beach Fin. Partners, L.P.)*, 488 B.R. 758, 769 (Bankr. S.D. Fla. 2013) (alterations and citations omitted). Good faith is a question of fact. *Id.*

Generally, it is not appropriate for a court "to determine the applicability of the mere conduit defense at the motion to dismiss stage." *Id.*; *see also Perlman*,

561 F. App'x at 813; *Perlman*, 559 F. App'x at 994. However, a "'complaint may be dismissed if an affirmative defense . . . appears on the face of the complaint.'" *Perlman*, 561 F. App'x at 813 (quoting *Bingham v. Thomas*, 654 F.3d 1171, 1175 (11th Cir. 2011)). To dismiss, the court would have to conclude that the affirmative defense is available as a matter of law, and not based on a determination of fact. *See In re Palm Beach Fin. Partners, L.P.*, 488 B.R. at 770 & n. 9.

For the purposes of the present motion, the parties' primary dispute is whether Highlands acted in good faith.[7] More specifically, Highlands' position depends on its assertion that it was not under a duty to investigate routine banking services based on the irregular transactions described in the Amended Complaint.

In the context of "routine banking services," the Eleventh Circuit has stated that "Florida law does not require banking institutions to investigate transactions." *Lawrence v. Bank of Am., N.A.*, 455 F. App'x 904, 907 (11th Cir. 2012) (unpublished). Applying this principle, the Eleventh Circuit recently affirmed a case granting dismissal based on the application of the mere conduit rule to an action against a bank involved in a Ponzi scheme. *Perlman*, 559 F. App'x at 994. *But see Perlman*, 561 F. App'x at 814 (reaching a contrary conclusion regarding a

---

[7] The Trustee does not address the "control" element of the mere conduit defense in its brief.

different bank, but based on the same Ponzi scheme). In that case, the pleadings asserted that the bank had knowledge of fraudulent activity based on

> a multitude of atypical transactions and procedural oddities, including . . . [the] opening of various accounts, numerous transfers amongst the accounts within short time periods, thousands of deposits of even dollar amounts, large cash deposits and withdrawals, the absence of any investment activity, and [the bank's] lifting of the freeze on the . . . account without further investigation.

*Perlman*, 559 F. App'x at 993. In short, the bank was used as mere conduit for the handling of money that was deposited and withdrawn in the course of the Ponzi scheme.

From the perspective of the depository bank, check kiting depends on the leverage of money that does not actually exist, making it distinguishable from a Ponzi scheme operated through an account containing funds. The check kiting alleged by the Trustee in this case required the use of overdraft credit provided by Highlands for which actual funds did not yet exist in the account. As previously stated, a bank is generally not required to provide overdraft services. Even though overdraft services may now be common within the banking sector, I am unable to conclude on the present record that it constitutes a "routine banking service" for purposes of the mere conduit rule. *Cf. Gevaerts v. TD Bank, N.A.*, No. 1:14-CV-20744, 2014 WL 5493183, at *4-5 (S.D. Fla. Oct. 31, 2014) (noting that a bank's duty to report overdrafts to a state bar organization may not constitute a routine banking service). This is particularly true based on the frequency of overdrafts

described in this case and the other circumstantial evidence alleged in the Amended Complaint. Because good faith does not exist as a matter of law based on the pleadings contained in the Amended Complaint, Highlands is not entitled to a judgment based on the application of the mere conduit rule at this time.

Highlands also challenges the actual fraudulent transfers claim asserted in Count I of the Amended Complaint based on its assertion that Frank Mongelluzzi's deposits into the Highlands accounts were not "transfers" for purposes of Florida's fraudulent transfer law. In short, Highlands asserts that it possessed a security interest in the deposits pursuant to Florida Statute § 674.2101(1)(a), thus excluding the deposits from the definition of a "transfer" under Florida Statute § 726.105.

Pursuant to the statute, "[a] transfer made . . . by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation: (a) With actual intent to hinder, delay, or defraud any creditor of the debtor." Fla. Stat. § 726.105(1)(a). A "transfer" is defined for purposes of this provision as "every mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with an asset or an interest in an asset, and includes payment of money, release, lease, and creation of a lien or other encumbrance." *Id.* § 726.102(14). An "asset" is defined as "property of a debtor,

but the term does not include: (a) Property to the extent it is encumbered by a valid lien." *Id.* § 726.102(2)(a).

Highlands asserts that it possesses a security interest in the deposits at issue in this case pursuant to Florida Statute § 674.2101(1)(a), which states that "[a] collecting bank has a security interest in an item and any accompanying documents or the proceeds of either: (a) In case of an item deposited in an account, to the extent to which credit given for the item has been withdrawn or applied." *See also id.* § 674.105(5) ("'Collecting bank' means a bank handling an item for collection except the payor bank."); *Feltman v. City Nat'l Bank of Fla. (In re Sophisticated Commc'ns., Inc.)*, 369 B.R. 689, 697 (Bankr. S.D. Fla. 2007) ("[C]ollecting banks . . . have an automatically perfected security interest in deposited items and their proceeds, which security interest takes priority over all other security interests."). As a result of this security interest, Highlands argues that the alleged transfers in this case cannot constitute transfers for purposes of avoidance.

As noted by the Trustee, "the existence and extent of the Defendant's security interest can only be determined after the factual nature of the overdrafts is determined." (Pl.'s Resp. in Opp'n to Def. Highland Union Bank's Mot. for J. on the Pleadings 23, ECF No. 49.) For purposes of Highlands' Rule 12(c) motion, I find that a factual dispute exists regarding whether a security interest exists and, if it does, the extent to which it may apply.

Case 1:14-cv-00063-JPJ-PMS   Document 53   Filed 02/19/15   Page 22 of 26   Pageid#: 364

For example, regarding the January 5-7, 2010, and January 22-25, 2010, examples, negative balances initially existed in the Highlands' account, followed by checks drawn by Mongelluzzi and subsequent covering deposits. In both examples, however, the covering deposits were not sufficient to cover both the initial negative balance and the checks drawn within the two-day collection cycle. If a security interest applies in these examples, then a factual question likely exists regarding its extent.

Similarly, various overdraft examples in Exhibit 9 indicate that covering deposits were not made within the two-day banking cycle, resulting in an issue as to whether credit was "withdrawn or applied" for the item deposited. Fla. Stat. § 674.2101(1)(a). An example exists on April 8-15, 2008, where the alleged overdraft transfer was outstanding for seven days. For these reasons, I find that Highlands' assertion of a security interest is not determinative at this stage in the litigation.

2.

Highlands' final argument is directed at the constructive fraudulent transfers claims asserted in Counts II and III of the Amended Complaint. Highlands asserts that it is entitled to judgment on these claims because Frank Mongelluzzi received dollar-for-dollar value for the overdraft loan repayment transfers through the reduction of his alleged overdraft debt with Highlands. In conjunction with this

-23-

argument, Highlands asserts that dismissal is warranted under both Virginia and Florida law. Highlands reaches this conclusion in spite of differences it identifies between the legal standards applied in the two states regarding these claims.

Unlike Highlands' prior arguments, the choice of law issues raised in its brief are of particular importance regarding the Trustee's constructive fraudulent transfer claims. As set forth by Highlands, Virginia law states that a transfer "which is not upon consideration deemed valuable in law . . . by an insolvent transferor, or by a transferor who is thereby rendered insolvent, shall be void as to creditors." Va. Code Ann. § 55-81. As noted by Highlands, the Fourth Circuit has concluded that Virginia Code § 55-81 "simply requires that a transfer or conveyance be 'upon consideration deemed valuable in law.' This phrase refers to '*any* valuable consideration received by the transferor.'" *Shaia v. Meyer (In re Meyer)*, 244 F.3d 352, 355 (4th Cir. 2001). As a result, "reasonably equivalent value" is not required. *C-T of Va., Inc. v. Euroshoe Assocs. Ltd. P'ship*, No. 91-1578, 1992 WL 12307, at *2 (4th Cir. Jan. 29, 1992) (unpublished). In this case, the implication is that the reduction in overdraft debt resulting from the overdraft loan repayment transfers constitutes valuable consideration under Virginia law.

By contrast, Florida law allows for the avoidance of transfers that are made "[w]ithout receiving a reasonably equivalent value in exchange for the transfer." *See* Fla. Stat. §§ 726.105(1)(b), 726.106(1). "What constitutes 'reasonable value'

-24-

is not statutorily defined. However, among the factors considered by courts include the good faith of the parties, the disparity between the fair value of the property and what the debtor actually received, and whether the transaction was at arm's length." *Kapila v. WLN Family Ltd. P'ship (In re LeNeve)*, 341 B.R. 53, 56–57 (Bankr. S.D. Fla. 2006) (addressing this term within the context of 11 U.S.C. § 548(a)(1)(B) and Fla. Stat. § 726.105(1)(b)). As noted by the United States District Court for the Middle District of Florida in a proceeding associated with the present bankruptcy case, *Welch v. Synovus Bank*, 517 B.R. 269 (M.D. Fla. 2014), "the question of whether [the bank] failed to exchange reasonably equivalent value for the relevant transfers in this case constitutes an issue to be resolved after the close of discovery." *Id.* at 283. At a minimum, like in *Synovus Bank*, the Trustee has alleged that the transfers at issue were made to Highlands for "less than reasonably equivalent value in exchange for such transfers." (Am. Compl. ¶¶ 53, 58, ECF No. 15.) For purposes of Highlands' Rule 12(c) motion, these allegations are sufficient at this stage of the proceeding. *See Synovus Bank*, 517 B.R. at 283.

As a result of the potentially different outcomes that could result under Virginia and Florida law, the choice of law issues identified in Highlands' brief may be critical for the resolution of the Trustee's constructive fraudulent transfer claims. By its own admission, however, Highlands acknowledges that if Virginia choice of law rules apply to this proceeding, then the substantive state law that will

apply is dependent on the form of transfer used to make the 38 overdraft loan repayment transfer deposits into Frank Mongelluzzi's accounts with Highlands. Highlands acknowledges in its brief that this information is not provided in the Amended Complaint. Therefore, even assuming Highlands' choice of law analysis is correct, its own arguments show the necessity for factual discovery. Absent further development of the record, I am unable to grant Highlands' request for judgment on the Trustee's constructive fraudulent transfer claims, because of the potentially diverse outcomes that may occur under Virginia and Florida law.

V.

For the foregoing reasons, it is **ORDERED** that the Defendant's Rule 12(c) Motion for Judgment on the Pleadings (ECF No. 44) is DENIED.

ENTER: February 19, 2015

/s/  James P. Jones
United States District Judge